COURT OF 
APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-249-CR
  
  
JODY 
Q. HARGROVE                                                             APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM 
THE 78TH DISTRICT COURT OF WICHITA COUNTY
 
------------
 
OPINION
 
------------
I. INTRODUCTION
        Appellant 
was indicted for attempted capital murder and two counts of aggravated robbery. 
Appellant pleaded not guilty and was tried to a jury.  The jury found 
Appellant guilty and assessed punishment at seventy-five years’ 
confinement.  In a single issue, Appellant argues that the trial court 
erred in overruling his motion to suppress statements he provided to law 
enforcement.  We affirm.
II. FACTUAL AND PROCEDURAL BACKGROUND
        Because 
Appellant does not challenge the factual or legal sufficiency of the evidence, a 
brief recitation of the facts will suffice.  The evidence showed that in 
the early morning hours of June 2, 2001 Meagan Smith Gilbert and her then 
boyfriend, Michael Gilbert, were at Meagan’s parent’s home in Wichita 
County.  Meagan and Michael were in her bedroom when they heard the dogs 
barking and the front door open.  At first they thought it was Meagan’s 
father, Clifton, who opened the door.  However, Meagan testified that the 
noises from outside grew louder and she heard footsteps.  Meagan left her 
bedroom to investigate the noise.  Meagan testified she and Michael were 
attacked by two males.  The attacker struck Meagan on the top of her head, 
forehead, chin, finger, and the back of her neck with a machete.  Michael 
testified that one of the attackers said he wanted money, which Michael gave him 
before being struck in the back of the head, arms, and back, also with a 
machete.
        Appellant 
became a suspect during the investigation, an arrest warrant was issued for him, 
and he was brought in for questioning.  During the interrogation, Appellant 
provided an oral and written statement implicating himself in the crime.  
At trial, Appellant filed a motion to suppress the statements, and a hearing was 
held.  Appellant argued that there was no evidence that he voluntarily 
waived his rights, that he requested the interview be terminated, and that he 
provided a written statement after requesting the appointment of an 
attorney.  The trial court overruled the motion to suppress and filed 
findings of fact and conclusions of law, in which it concluded that Appellant 
knowingly waived his right to remain silent, that assuming Appellant did invoke 
his right to counsel he reinitiated contact with law enforcement, and that the 
taking of Appellant’s statements did not violate his rights under the Fifth, 
Sixth, or Fourteenth Amendments to the United States Constitution and Article 1, 
Section 10 of the Texas Constitution.  Appellant was tried to a jury, which 
found him guilty and assessed his punishment at seventy-five years’ 
confinement.
III. STATEMENTS
        Although 
Appellant refers generally to his statements in his appellate brief, we will 
briefly set out the circumstances of each statement that he provided.  
Appellant made three statements while in custody, which consisted of two oral 
statements and one written statement. Deputy George Robinson of the Wichita 
County Sheriff’s Office first interviewed Appellant. Appellant’s initial 
interview was recorded by videotape.  Deputy Robinson advised Appellant of 
his Miranda rights on the videotape, but Appellant did not affirmatively 
state on video that he was waiving those rights.  Appellant also signed a Miranda 
warning form provided by the Sheriff’s Office that states, “Your signature 
below indicates only that you understand your rights.”  During this 
initial interrogation, Appellant denied any involvement in the crime, and 
deputies decided to formally charge him.  Deputies took Appellant before a 
magistrate who again advised Appellant of his Miranda rights, determined 
that probable cause existed, and set bond.  The magistrate asked Appellant 
if he was indigent and if he wanted to have an attorney appointed to represent 
him.  The magistrate’s form contains a checkmark indicating that 
Appellant answered yes to this question and further shows that “the forms for 
requesting a court-appointed attorney were furnished and the procedures for 
requesting a court-appointed attorney were explained.”  As Appellant was 
being escorted back to the jail following the hearing, he requested to again 
speak with Deputy Robinson.  After reinitiating contact, Deputy Robinson 
interviewed Appellant a second time on videotape, during which time he admitted 
to being involved in the offense.  After orally confessing, Appellant 
provided a written confession.  The written confession contains a 
recitation of Appellant’s rights and also contains an explicit waiver of those 
rights, which was signed by Appellant.
IV. SUPPRESSION HEARING
        Prior 
to trial, Appellant filed a motion to suppress the statements, and a hearing was 
held. Appellant did not testify at the suppression hearing, but his trial 
counsel argued that he invoked his right to counsel while in front of the 
magistrate and thereafter did not make a valid waiver of his rights.  He 
also argued that there was no evidence that he was read his rights again and 
waived them.  The trial judge sought clarification of Appellant’s 
argument and asked, “On the statement’s admissibility, you’re relying 
solely on the fact that he signed the – or indicated on the magistrate 
warnings form that he wanted to have an attorney?”  Appellant’s counsel 
replied, “That’s correct, your Honor.”  The only specific argument 
made in reference to the written statement was that it was done at Deputy 
Robinson’s request after Appellant had invoked his right to counsel.  
Appellant’s counsel stated, “I think it’s unquestioned that since he 
requested an attorney and was not allowed an opportunity to consult with an 
attorney prior to making a statement that that statement following the reading 
of his rights and his arraignment should be suppressed.”
        Appellant’s 
counsel also argued that during the first interview, prior to being taken before 
the magistrate, he requested to terminate the interview.  The court replied 
that it had viewed the videotape and did not find that Appellant’s comment was 
sufficient to indicate he wished to terminate the interview.
        The 
trial court requested that the parties provide briefs in support of the 
arguments made at the suppression hearing.  Appellant filed a brief, which 
indicates that the “following argument directly addresses the oral statements 
at issue.”
        After 
the trial court had filed its findings of fact and conclusions of law, Appellant 
objected to one particular finding of fact, which dealt with the reading of 
Appellant’s rights.  Appellant challenged the finding that he had waived 
his rights verbally and in writing.  Appellant argued that although there 
was testimony that he signed a written understanding of his rights, there was no 
evidence that he signed a written waiver of his rights before he gave his oral 
statement.  Appellant also argued that, although there may have been a 
waiver before the written statement, it was inadequate.  The court 
overruled this objection.  During trial, the videotaped oral statements and 
written confession were offered and admitted into evidence over Appellant’s 
renewed objection.
V. STANDARD OF REVIEW
        We 
review the trial court's admission of evidence by the abuse of discretion 
standard.  State v. Oliver, 29 S.W.3d 190, 191 (Tex. App.—San 
Antonio 2000, pet. ref’d).  We afford almost total deference to a trial 
court's determination of the historical facts that the record supports, 
especially when the trial court's fact findings are based on an evaluation of 
credibility and demeanor.  Guzman v. State, 955 S.W.2d 85, 89 (Tex. 
Crim. App.1997); Oliver, 29 S.W.3d at 191.  We afford the same 
amount of deference to trial courts' rulings on application of law to fact 
questions, also known as mixed questions of law and fact, if the resolution of 
those ultimate questions turns on an evaluation of credibility and 
demeanor.  Oliver, 29 S.W.3d at 191.  However, we review de 
novo mixed questions of law and fact not falling within this category.  Id.
VI. STATEMENT BEFORE MAGISTRATE’S HEARING
        Appellant 
makes two complaints in regards to his first oral statement: (1) although he 
indicated he understood his rights, he never expressly waived them, and (2) he 
continued to be questioned despite his request to terminate the interview.
A. Waiver of Rights
        Appellant’s 
first complaint as to his first oral statement is that, although he signed a 
form indicating that he understood his rights, he never expressly waived his 
rights.[1]  The Code of Criminal Procedure 
requires that before an oral statement is admissible, the accused must be warned 
that
   
(1) he has the right to remain silent and not make any statement at all and that 
any statement he makes may be used against him at his trial;
 
(2) any statement he makes may be used as evidence against him in court;
 
(3) he has the right to have a lawyer present to advise him prior to and during 
any questioning;
 
(4) if he is unable to employ a lawyer, he has the right to have a lawyer 
appointed to advise him prior to and during any questioning; and
 
(5) he has the right to terminate the interview at any time.
    
Tex. Code Crim. Proc. Ann. art. 38.22, 
§ 2(a) (Vernon 1979).
        The 
code further requires that “the accused, prior to and during the making of the 
statement, knowingly, intelligently, and voluntarily waived the rights set out 
in the warning.”  Id. § 2(b).
        A 
waiver of rights may be inferred from the actions and words of the person 
interrogated. Oliver, 29 S.W.3d at 191-92.  The Court of Criminal 
Appeals has stated “[w]e do not . . . interpret the oral confession statute to 
require an express verbal statement from an accused that he waives his rights 
prior to giving the statement. In reaching the voluntariness of a confession, 
this Court looks at the totality of the circumstances.”  Barefield v. 
State, 784 S.W.2d 38, 40-41 (Tex. Crim. App. 1989), cert. denied, 497 
U.S. 1011 (1990), overruled on other grounds by Zimmerman v. 
State, 860 S.W.2d 89, 94 (Tex. Crim. App. 1993).  Furthermore, in Oliver, 
the San Antonio Court of Appeals held that the “Court of Criminal Appeals has 
approved the inference of a waiver from the totality of the circumstances in the 
situation where an oral confession contains a recitation of the article 38.22 
warnings and the defendant indicates he understands his rights and proceeds 
without hesitation to participate in the interview.”  Oliver, 29 
S.W.3d at 193.
        In 
the present case, although Appellant did not make an explicit waiver of his 
article 38.22 rights, it is apparent from the totality of the circumstances that 
he made his statement after knowingly, intelligently, and voluntarily waiving 
his rights.  Deputy Robinson advised Appellant of his rights on videotape 
and asked if he understood, to which Appellant replied, “I understand my 
rights fully, sir.”  Appellant then signed a Miranda warning form, 
which contains the statement, “Your signature below indicates only that you 
understand your rights.”  Appellant then proceeded without hesitation to 
discuss the present offense, although he denied any involvement during this 
first interview.  Thus, based on the totality of the circumstances, we hold 
that Appellant validly waived his rights under article 38.22.  See 
Oliver, 29 S.W.3d at 193 (finding that despite an explicit waiver, defendant 
did make statement knowingly, intelligently, and voluntarily after he was read 
his rights and indicated that he understood them and then proceeded without 
hesitation to discuss circumstances surrounding murder with which he was 
charged).  Therefore, we overrule Appellant’s argument.
B. Request to Terminate
        Appellant 
next complains that he continued to be questioned after he had requested to 
terminate the interview.  During the first interview Appellant stated, 
“Let’s just terminate it,” to which Deputy Robinson asked, “[D]o you 
want to stop now?  Appellant replied, “Why should we go on because I’ll 
be spinning my wheels.  You’re spinning your wheels.”  However, 
Appellant never answered Deputy Robinson’s question whether he wanted to stop, 
he continued speaking without clarifying his remark, and he never again 
requested to terminate the interview.
        A 
law enforcement officer may not continue to question the suspect until the 
officer succeeds in persuading the suspect to change his mind and talk.  Dowthitt 
v. State, 931 S.W.2d 244, 257 (Tex. Crim. App. 1996).  But an officer 
need not stop his questioning unless the suspect's invocation of rights is 
unambiguous, and the officer is not required to clarify ambiguous remarks.  
Id.
        Here, 
Appellant’s comments were ambiguous.  Taken in context, it appears 
Appellant was of the opinion that he was wasting his time because he was of the 
belief that he was “spinning” his wheels.  See id. (finding 
statement – “I can't say more than that. I need to rest.” – was not an 
unambiguous invocation of the right to remain silent, but merely an indication 
that defendant believed he was physically unable to continue); Franks v. 
State, 90 S.W.3d 771, 786-87 (Tex. App.—Fort Worth 2002, no pet.) (holding 
defendant’s statement – “I don’t want to talk anymore. I’m tired.” 
– was ambiguous, and his rights were not violated by the continuation of the 
interrogation).  Moreover, after this statement, Appellant continued 
speaking with Deputy Robinson and did not unequivocally indicate he wanted to 
stop.  Thus, we hold that Appellant’s statement was ambiguous and that 
his rights were not violated by the continuation of the interrogation.  
Therefore, we overrule Appellant’s argument.
VII. STATEMENT AFTER MAGISTRATE’S HEARING
        Finally, 
Appellant complains that the second interview and the written statement were 
given after he had invoked his right to counsel.  Appellant argues that the 
magistrate’s warning form shows that he requested a court-appointed 
attorney.  Appellant further argues that adversarial proceedings had begun 
and that he was entitled to defense counsel at all “critical stages” of the 
prosecution, absent a valid waiver.  In making his argument, Appellant 
relies on his Sixth Amendment right to counsel.  To properly analyze 
Appellant’s argument, we must progress through a series of steps.
A. Attachment of Sixth Amendment
        The 
Sixth Amendment right to assistance of counsel does not attach prior to the 
initiation of adversarial judicial proceedings, which may be initiated by way of 
formal charge, preliminary hearing, indictment, information, or 
arraignment.  United States v. Gouveia, 467 U.S. 180, 187-88, 104 S. 
Ct. 2292, 2297 (1984); Green v. State, 872 S.W.2d 717, 719 (Tex. Crim. 
App. 1994); Franks, 90 S.W.3d at 788.  Therefore, we must first 
determine whether taking Appellant before the magistrate in the instant case 
constituted the beginning of adversarial proceedings.  The magistrate’s 
hearing consisted of advising Appellant of his rights, informing him of the 
crime accused, determining probable cause for continued detention, advising him 
of the right and procedures for obtaining appointed counsel, and setting 
bond.  Thus, the hearing appears to have complied with the requirements of 
an article 15.17 hearing.  Tex. Code 
Crim. Proc. Ann. art. 15.17 (Vernon Supp. 2004-05).  The clerk’s 
record also shows that there was an arrest warrant issued for Appellant prior to 
the day he was brought in for questioning.
        The 
Court of Criminal Appeals has not set a bright line rule as to when adversarial 
proceedings have begun, and Texas case law is not determinative.  See 
State v. Frye, 897 S.W.2d 324, 328 (Tex. Crim. App. 1995) (acknowledging 
that court has not declared a “bright line rule” for determining when 
adversarial proceedings have commenced); Green, 872 S.W.2d at 720 (noting 
caselaw is indeterminate on what events serve to initiate adversarial 
proceedings).  Although an arrest alone has been held insufficient to show 
the initiation of criminal proceedings, an article 15.17 hearing accompanied by 
an arrest warrant has been held to mark the beginning of formal adversarial 
proceedings.  Compare Dunn v. State, 696 S.W.2d 561, 565 (Tex. Crim. 
App. 1985) (holding mere arrest and subsequent questioning not sufficient 
formalization of proceedings to trigger requirement of counsel under the Sixth 
Amendment), cert. denied, 475 U.S. 1089 (1986), overruled on other 
grounds by Goodwin v. State, 799 S.W.2d 719 (Tex. Crim. App. 1990), with 
Nehman v. State, 721 S.W.2d 319, 323 n.2 (Tex. Crim. App. 1986) 
(concluding formal judicial proceedings had been initiated by the time of 
defendant’s article 15.17 “warning hearing” because charges had been 
filed).  Likewise, whether the filing of a felony complaint is sufficient 
to trigger Sixth Amendment protections is also not entirely clear.  Compare 
Green, 872 S.W.2d at 720 (declining to hold that filing of felony 
complaint triggered Sixth Amendment protections), with Barnhill v. State, 
657 S.W.2d 131, 132 (Tex. Crim. App. [Panel Op.] 1983) (finding Sixth Amendment 
right to counsel attached upon filing of felony complaint with 
magistrate).  Based on Nehman, we conclude in this case that the 
adversarial process had begun because Appellant was taken for his article 15.17 
hearing after an arrest warrant had been issued.
B. Invocation of Right to Counsel
        Having 
concluded that adversarial proceedings had begun, we must next consider whether 
Appellant invoked his right to counsel.  In State v. Hernandez, the 
San Antonio Court of Appeals held that the defendant, who was arrested following 
the filing of formal charges, did invoke his Sixth Amendment right to counsel at 
his article 15.17 hearing where he claimed indigency and requested appointment 
of counsel.  842 S.W.2d 306, 311 (Tex. App.—San Antonio 1992, pet. 
ref’d), cert. denied, 509 U.S. 927 (1993).  We likewise hold that 
in this case, where defendant was taken before a magistrate for his article 
15.17 hearing after formal charges had been filed, his claim that he was 
indigent and wished to have counsel appointed was sufficient to invoke his Sixth 
Amendment right to counsel.
C. Waiver of Sixth Amendment Right to Counsel
        Once 
the Sixth Amendment attaches, government efforts to elicit information from the 
accused, including interrogation, represent “critical stages” at which the 
Sixth Amendment applies.  Michigan v. Jackson, 475 U.S. 625, 630, 
106 S. Ct. 1404, 1408 (1986); Lemmons v. State, 75 S.W.3d 513, 520 (Tex. 
App.—San Antonio 2002, pet. ref’d).  The State has the burden to prove 
Appellant knowingly, intelligently, and voluntarily waived his Sixth Amendment 
right to counsel.  Jackson, 475 U.S. at 633; Lemmons, 75 
S.W.3d at 520. The Court of Criminal Appeals has recently recognized a two-step 
requirement to show that an accused has waived his previously invoked right to 
counsel. Cross v. State, 144 S.W.3d 521, 526-27 (Tex. Crim. App. 
2004).  This waiver is based on the rule established by the United States 
Supreme Court in Edwards v. Arizona, 451 U.S. 477, 101 S. Ct. 1880 
(1981).  Cross, 144 S.W.3d at 526-27.  In Edwards, the 
Court held that “an accused[,] . . . having expressed his desire to deal with 
the police only through counsel, is not subject to further interrogation by the 
authorities until counsel has been made available to him, unless the accused 
himself initiates further communication, exchanges, or conversation with the 
police.”  Id.  Although Edwards dealt with the Fifth 
Amendment right to counsel, it was extended by the Court to the context of the 
Sixth Amendment.  See Jackson, 475 U.S. at 636 (concluding that the 
assertion of the right to counsel is no less significant when the basis of the 
assertion is the Sixth Amendment); see also Holloway v. State, 780 S.W.2d 
787, 790 (Tex. Crim. App. 1989) (recognizing the extension of Edwards to 
the Sixth Amendment context).  In Oregon v. Bradshaw, the Supreme 
Court clarified Edwards and established a two-step process to determine 
whether a suspect has waived his previously invoked right to counsel.  462 
U.S. 1039, 1044-46, 103 S. Ct. 2830, 2834-35 (1983).  As explained by the 
Court of Criminal Appeals in Cross, the first step requires proof that 
the suspect himself initiates further communication with the police after 
invoking his right to counsel. Cross, 144 S.W.3d at 527.  The second 
step requires proof that, after the suspect reinitiates communication with the 
authorities, the suspect validly waives the right to counsel.  Id.  
Although Cross involved the Fifth Amendment, there is no reason this rule 
should not be extended to the context of the Sixth Amendment, based on the 
reasoning of the Jackson Court.  See Jackson, 475 U.S. at 
632, 106 S. Ct. at 1408-09 (stating that the Sixth Amendment right to counsel 
requires at least as much protection as the Fifth Amendment right to 
counsel).  Therefore, in the present case, the State was required to prove 
that Appellant reinitiated contact after he requested appointment of counsel at 
his article 15.17 hearing and that he validly waived his right to counsel.  
Cross, 144 S.W.3d at 527.
1. Appellant Reinitiated Contact
        Appellant 
did reinitiate contact with the police after he was taken before the 
magistrate.  Deputy Johns testified that, after he escorted Appellant back 
to the jail after his hearing, Appellant requested again to speak with Deputy 
Robinson.  Deputy Johns testified that Appellant specifically stated, “I 
want to talk to that dude I was talking to before.”  In its findings of 
fact and conclusions of law, the trial court found that Appellant reinitiated 
contact with law enforcement.  There is no reason to dispute this finding 
by the trial judge, as he was in the position to evaluate the credibility and 
demeanor of the witnesses. See Guzman, 955 S.W.2d at 89 (stating that as 
a general rule appellate courts should afford almost total deference to a trial 
court's determination of the historical facts that the record supports, 
especially when the trial court's fact findings are based on an evaluation of 
credibility and demeanor).
2. Did Appellant Validly Waive Previously Invoked 
Right to Counsel?
        Appellant 
argues that there is no evidence that after he invoked his right to counsel that 
he was again read his rights or waived them before giving his second oral 
statement.  We agree.
3. Tex. Code 
Crim. Proc. Ann. art. 38.22
        Article 
38.22, section 3(a) governs the admissibility of the oral statement of an 
accused.  Tex. Code Crim. Proc. Ann. 
art. 38.22, § 3(a) (Vernon Supp. 2004-05).  It states that no oral 
statement of an accused shall be admissible unless “prior to the statement but 
during the recording the accused is given the warning in Subsection (a) of 
Section 2 and the accused knowingly, intelligently, and voluntarily waives any 
rights set out in the warning.”  Id. § 3(a)(2).  Section 2 
requires that the accused, prior to making the statement, be warned that
   
(1) he has the right to remain silent and not make any statement at all and that 
any statement he makes may be used against him at his trial;

(2) any statement he makes may be used as evidence against him in court;

(3) he has the right to have a lawyer present to advise him prior to and during 
any questioning;

(4) if he is unable to employ a lawyer, he has the right to have a lawyer 
appointed to advise him prior to and during any questioning; and
(5) 
he has the right to terminate the interview at any time.
   
Id. 
§ 2(a).
        Furthermore, 
section 3(e) requires that the “courts of this state shall strictly construe 
Subsection (a) of this section and may not interpret Subsection (a) as making 
admissible a statement unless all requirements of the subsection have been 
satisfied by the state.”  Id. § (3)(e); see also Davidson v. 
State, 25 S.W.3d 183, 185 (Tex. Crim. App. 2000) (noting that by its plain 
language section 3(e) requires strict compliance with all portions of section 
3(a)).
        In 
the instant case, after Appellant stated he wanted to again speak with Deputy 
Robinson, he was taken back into the interview room where he was 
videotaped.  As the second interview began, Deputy Robinson stated, 
“You’ve just had your rights read.”  However, Deputy Robinson did not 
advise Appellant of his rights on the videotape.  Additionally, Deputy 
Robinson testified that he did not read Appellant his rights before the second 
oral interview and also testified that he was not present at the magistrate’s 
hearing and therefore did not know if Appellant had been advised of his rights 
while in front of the magistrate.
        Therefore, 
since Section 3(a) was not strictly complied with, we hold that Appellant’s 
oral confession should not have been admitted. See Davidson, 25 S.W.3d at 
185 (finding because appellant's statements were not recorded in accordance with 
the dictates of article 38.22, it would appear that they were inadmissible at 
appellant's trial).  The trial court thus abused its discretion in 
admitting the second oral statement.  See Renfro v. State, 958 
S.W.2d 880, 888 (Tex. App.—Texarkana 1997, pet. ref’d) (finding trial court 
abused its discretion in admitting oral confession that did not comply with the 
requirements of article 38.22, section3(a)).  Having found that 
Appellant’s second oral statement was inadmissible, we must determine whether 
allowing its admission caused harm.
VIII. HARM
        Because 
the error is constitutional, we apply rule 44.2(a). Tex. R. App. P. 44.2(a).  The error 
is harmful unless we find, beyond a reasonable doubt, that the error in 
admitting Appellant’s second oral statement made no contribution to the 
conviction or the punishment.  Dowthitt, 931 S.W.2d at 263; Renfro, 
958 S.W.2d at 888.
        Our 
harmless error analysis should not focus on the propriety of the outcome of the 
trial; instead, we should calculate as much as possible the probable impact on 
the jury in light of the existence of other evidence.  Wesbrook v. State, 
29 S.W.3d 103, 119 (Tex. Crim. App. 2000), cert. denied, 532 U.S. 944 
(2001).  We consider the source and nature of the error, the extent that it 
was emphasized by the State, its probable collateral implications, the weight a 
juror would probably place on the error, and whether declaring it harmless would 
be likely to encourage the State to repeat it with impunity.  Harris v. 
State, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989).  This requires us to 
evaluate the entire record in a neutral, impartial, and even-handed manner, not 
“in the light most favorable to the prosecution.” Id. at 586.
A. Written Statement
        As 
noted earlier, Appellant also provided a written statement after his oral 
confession.  This written statement contained the required warnings and 
also contained an explicit waiver of rights, which Appellant signed before 
writing out his statement.  See Millslagle v. State, 150 S.W.3d 781, 
784 (Tex. App.—Austin 2004, pet dism’d, untimely filed) (holding that 
failure to record defendant’s oral statement did not render inadmissible his 
later written statement).  Additionally, the written statement was entirely 
consistent with the oral statement.  Thus, under the second step discussed 
in Cross, this written statement shows that Appellant validly waived his 
previously invoked right to counsel.  Cross, 144 S.W.3d at 
527.  Therefore, Appellant’s written statement, provided after 
reinitiating contact with law enforcement and validly waiving his right to 
counsel, was properly admitted at his trial.
        Appellant 
also challenged the written waiver by arguing that there are circumstances where 
a waiver under the Fifth Amendment might not be sufficient to overcome the Sixth 
Amendment invocation of the right to counsel.  Appellant cites Holloway 
as support for this argument. 780 S.W.2d at 795 (analyzing the relationship 
between the protections provided by the Fifth and Sixth Amendments).  
However, the court in Holloway went further and found that “if a 
suspect is in fact represented by counsel and the case progresses to the point 
at which the Sixth Amendment applies, the Sixth Amendment imposes requirements . 
. . not demanded by Miranda and the Fifth Amendment.”  See id. 
(holding that once an accused is represented by counsel, he cannot unilaterally 
waive his Sixth Amendment right).  Here, Appellant was not represented by 
counsel at the time that he reinitiated contact with Deputy Robinson.  
Therefore, Appellant could unilaterally waive his previously invoked right to 
counsel.  Additionally, the Supreme Court held in Patterson v. Illinois 
that “an accused who is admonished with the warnings prescribed by this Court 
in Miranda . . . has been sufficiently apprised of the nature of his 
Sixth Amendment rights, and of the consequences of abandoning those rights, so 
that his waiver on this basis will be considered a knowing and intelligent 
one.”  487 U.S. 285, 296, 108 S. Ct. 2389, 2397 (1988).  We 
therefore overrule Appellant’s argument with regard to his written statement.
B. Additional Evidence
        Besides 
the statements provided by Appellant, there was additional evidence connecting 
him to the offense.  Both victims were able to pick Appellant’s picture 
out of a lineup and identify him in court as their attacker.  Moreover, the 
other person charged in this offense, Howard Hill, testified at Appellant’s 
trial to his role in the offense.  Therefore, although the second oral 
statement was erroneously admitted, we conclude that it was harmless 
error.  See Dowthitt, 931 S.W.2d at 263 (finding error in admitting 
oral statement harmless where written statement was cumulative of the details 
provided in the oral statement and physical evidence strongly connected 
defendant to the murders); Renfro, 958 S.W.2d at 888 (concluding 
erroneous admission of defendant’s oral statement was harmless because 
defendant did not say anything in oral confession not included in the written 
confession, which was cumulative of and entirely consistent with oral 
confession).
IX. ADDITIONAL ARGUMENT ON APPEAL
        We 
note that Appellant has argued in his appellate brief that he “invoked his 
right to counsel when brought before the magistrate, indicated he did not fully 
understand all of his rights, and was never read his rights again and never 
affirmatively waived his rights prior to the taking of his oral statement which 
lead [sic] to his written statement.”  However, as detailed above, 
Appellant did not argue at the suppression hearing that he did not fully 
understand his rights, nor did he argue that the second oral statement in any 
way tainted his written statement.  Therefore, Appellant cannot now raise 
those arguments on appeal.  See Judd v. State, 923 S.W.2d 135, 138 
(Tex. App.—Fort Worth 1996, pet. ref’d) (emphasizing that any objection at 
trial that differs from complaint on appeal preserves nothing for review); McNairy 
v. State, 777 S.W.2d 570, 573 (Tex. App.—Austin 1989), aff’d on other 
grounds, 835 S.W.2d 101 (Tex. Crim. App. 1991) (acknowledging that the 
contention presented on appeal must be the same as that presented to the trial 
court at the pretrial hearing on the motion to suppress evidence).  Thus, 
we will not address these arguments.
X. CONCLUSION
        Having 
overruled Appellant’s sole issue, we affirm the trial court’s judgment.
   
   
                                                                  ANNE 
GARDNER
                                                                  JUSTICE
   
 
PANEL 
A:   CAYCE C.J., GARDNER and McCOY JJ.
 
PUBLISH
 
DELIVERED: 
February 17, 2005


NOTES
1.  
In making this argument, Appellant cites as authority Williams v. State, 
84 S.W.3d 243 (Tex. App.—Tyler 2002, pet. granted).  However, the Court 
of Criminal Appeals remanded with instructions to the court of appeals to 
dismiss for lack of jurisdiction.  Williams v. State, No. 
12-01-00126-CR, 2002 WL 1822326 (Tex. App.—Tyler Aug. 7, 2002, no pet.).  
Additionally, Williams involved the issue of waiver in the context of a 
written confession, while Appellant cites it in support of his argument against 
the waiver in his oral statement.  Thus, the case is distinguishable.  
Furthermore, in the instant case as will be discussed, Appellant provided a 
written statement that contained an explicit waiver of rights.