HARGROVE V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-03-249-CR

JODY Q. HARGROVE APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 78
TH
 DISTRICT COURT OF WICHITA COUNTY

------------

OPINION

------------

I. INTRODUCTION

Appellant was indicted for attempted capital murder and two counts of aggravated robbery.  Appellant pleaded not guilty and was tried to a jury.  The jury found Appellant guilty and assessed punishment at seventy-five years’ confinement.  In a single issue, Appellant argues that the trial court erred in overruling his motion to suppress statements he provided to law enforcement. We affirm.

II. FACTUAL AND PROCEDURAL BACKGROUND

Because Appellant does not challenge the factual or legal sufficiency of the evidence, a brief recitation of the facts will suffice.  The evidence showed that in the early morning hours of June 2, 2001 Meagan Smith Gilbert and her then boyfriend, Michael Gilbert, were at Meagan’s parent’s home in Wichita County.  Meagan and Michael were in her bedroom when they heard the dogs barking and the front door open.  At first they thought it was Meagan’s father, Clifton, who opened the door.  However, Meagan testified that the noises from outside grew louder and she heard footsteps.  Meagan left her bedroom to investigate the noise.  Meagan testified she and Michael were attacked by two males.  The attacker struck Meagan on the top of her head, forehead, chin, finger, and the back of her neck with a machete.  Michael testified that one of the attackers said he wanted money, which Michael gave him before being struck in the back of the head, arms, and back, also with a machete.

Appellant became a suspect during the investigation, an arrest warrant was issued for him, and he was brought in for questioning.  During the interrogation, Appellant provided an oral and written statement implicating himself in the crime.  At trial, Appellant filed a motion to suppress the statements, and a hearing was held.  Appellant argued that there was no evidence that he voluntarily waived his rights, that he requested the interview be terminated, and that he provided a written statement after requesting the appointment of an attorney.  The trial court overruled the motion to suppress and filed findings of fact and conclusions of law, in which it concluded that Appellant knowingly waived his right to remain silent, that assuming Appellant did invoke his right to counsel he reinitiated contact with law enforcement, and that the taking of Appellant’s statements did not violate his rights under the Fifth, Sixth, or Fourteenth Amendments to the United States Constitution and Article 1, Section 10 of the Texas Constitution.  Appellant was tried to a jury, which found him guilty and assessed his punishment at seventy-five years’ confinement.

III. STATEMENTS

Although Appellant refers generally to his statements in his appellate brief, we will briefly set out the circumstances of each statement that he provided.  Appellant made three statements while in custody, which consisted of two oral statements and one written statement.  Deputy George Robinson of the Wichita County Sheriff’s Office first interviewed Appellant.  Appellant’s initial interview was recorded by videotape.  Deputy Robinson advised Appellant of his 
Miranda
 rights on the videotape, but Appellant did not affirmatively state on video that he was waiving those rights.  Appellant also signed a 
Miranda
 warning form provided by the Sheriff’s Office that states, “Your signature below indicates only that you understand your rights.”  During this initial interrogation, Appellant denied any involvement in the crime, and deputies decided to formally charge him.  Deputies took Appellant before a magistrate who again advised Appellant of his 
Miranda
 rights, determined that probable cause existed, and set bond.  The magistrate asked Appellant if he was indigent and if he wanted to have an attorney appointed to represent him.  The magistrate’s form contains a checkmark indicating that Appellant answered yes to this question and further shows that “the forms for requesting a court-appointed attorney were furnished and the procedures for requesting a court-appointed attorney were explained.”  As Appellant was being escorted back to the jail following the hearing, he requested to again speak with Deputy Robinson.  After reinitiating contact, Deputy Robinson interviewed Appellant a second time on videotape, during which time he admitted to being involved in the offense.  After orally confessing, Appellant provided a written confession. The written confession contains a recitation of Appellant’s rights and also contains an explicit waiver of those rights, which was signed by Appellant.

IV. SUPPRESSION HEARING

Prior to trial, Appellant filed a motion to suppress the statements, and a hearing was held.  Appellant did not testify at the suppression hearing, but his trial counsel argued that he invoked his right to counsel while in front of the magistrate and thereafter did not make a valid waiver of his rights.  He also argued that there was no evidence that he was read his rights again and waived them.  The trial judge sought clarification of Appellant’s argument and asked, “On the statement’s admissibility, you’re relying solely on the fact that he signed the – or indicated on the magistrate warnings form that he wanted to have an attorney?”  Appellant’s counsel replied, “That’s correct, your Honor.” The only specific argument made in reference to the written statement was that it was done at Deputy Robinson’s request after Appellant had invoked his right to counsel.  Appellant’s counsel stated, “I think it’s unquestioned that since he requested an attorney and was not allowed an opportunity to consult with an attorney prior to making a statement that that statement following the reading of his rights and his arraignment should be suppressed.”

Appellant’s counsel also argued that during the first interview, prior to being taken before the magistrate, he requested to terminate the interview.  The court replied that it had viewed the videotape and did not find that Appellant’s comment was sufficient to indicate he wished to terminate the interview.

The trial court requested that the parties provide briefs in support of the arguments made at the suppression hearing.  Appellant filed a brief, which indicates that the “following argument directly addresses the oral statements at issue.”

After the trial court had filed its findings of fact and conclusions of law, Appellant objected to one particular finding of fact, which dealt with the reading of Appellant’s rights.  Appellant challenged the finding that he had waived his rights verbally and in writing.  Appellant argued that although there was testimony that he signed a written understanding of his rights, there was no evidence that he signed a written waiver of his rights before he gave his oral statement.  Appellant also argued that, although there may have been a waiver before the written statement, it was inadequate.  The court overruled this objection.  During trial, the videotaped oral statements and written confession were offered and admitted into evidence over Appellant’s renewed objection. 

V. STANDARD OF REVIEW

We review the trial court's admission of evidence by the abuse of discretion standard.  
State v. Oliver
, 29 S.W.3d 190, 191 (Tex. App.—San Antonio 2000, pet. ref’d).  We afford almost total deference to a trial court's determination of the historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor.  
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App.1997); 
Oliver
, 29 S.W.3d at 191.  We afford the same amount of deference to trial courts' rulings on application of law to fact questions, also known as mixed questions of law and fact, if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor.  
Oliver
, 29 S.W.3d at 191.  However, we review de novo mixed questions of law and fact not falling within this category.  
Id
.

VI. STATEMENT BEFORE MAGISTRATE’S HEARING

Appellant makes two complaints in regards to his first oral statement:  (1) although he indicated he understood his rights, he never expressly waived them, and (2) he continued to be questioned despite his request to terminate the interview.

A. Waiver of Rights

Appellant’s first complaint as to his first oral statement is that, although he signed a form indicating that he understood his rights, he never expressly waived his rights.
(footnote: 1)  The Code of Criminal Procedure requires that before an oral statement is admissible, the accused must be warned that

(1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

(2) any statement he makes may be used as evidence against him in court;

(3) he has the right to have a lawyer present to advise him prior to and during any questioning;

(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and 

(5) he has the right to terminate the interview at any time.

Tex. Code Crim. Proc. Ann.
 art. 38.22, § 2(a) (Vernon 1979).

The code further requires that “the accused, prior to and during the making of the statement, knowingly, intelligently, and voluntarily waived the rights set out in the warning.”  
Id
. § 2(b).

A waiver of rights may be inferred from the actions and words of the person interrogated.  
Oliver
, 29 S.W.3d at 191-92.  The Court of Criminal Appeals has stated “[w]e do not . . . interpret the oral confession statute to require an express verbal statement from an accused that he waives his rights prior to giving the statement.  In reaching the voluntariness of a confession, this Court looks at the totality of the circumstances.”  
Barefield v. State
, 784 S.W.2d 38, 40-41 (Tex. Crim. App. 1989), 
cert. denied
, 497 U.S. 1011 (1990), 
overruled on other grounds
 
by
 
Zimmerman v. State
, 860 S.W.2d 89, 94 (Tex. Crim. App. 1993).  Furthermore, in 
Oliver
, the San Antonio Court of Appeals held that the “Court of Criminal Appeals has approved the inference of a waiver from the totality of the circumstances in the situation where an oral confession contains a recitation of the article 38.22 warnings and the defendant indicates he understands his rights and proceeds without hesitation to participate in the interview.”  
Oliver
, 29 S.W.3d at 193.

In the present case, although Appellant did not make an explicit waiver of his article 38.22 rights, it is apparent from the totality of the circumstances that he made his statement after knowingly, intelligently, and voluntarily waiving his rights.  Deputy Robinson advised Appellant of his
 rights on videotape and asked if he understood, to which Appellant replied, “I understand my rights fully, sir.”  Appellant then signed a 
Miranda
 warning form, which contains the statement, “Your signature below indicates only that you understand your rights.”  Appellant then proceeded without hesitation to discuss the present offense, although he denied any involvement during this first interview.  Thus, based on the totality of the circumstances, we hold that Appellant validly waived his rights under 
article 38.22.  
See Oliver
, 29 S.W.3d at 193 (finding that despite an explicit waiver, defendant did make statement knowingly, intelligently, and voluntarily after he was read his rights and indicated that he understood them and then proceeded without hesitation to discuss circumstances surrounding murder with which he was charged).  Therefore, we overrule Appellant’s argument.

B. Request to Terminate

Appellant next complains that he continued to be questioned after he had requested to terminate the interview.  During the first interview Appellant stated, “Let’s just terminate it,” to which Deputy Robinson asked, “[D]o you want to stop now?  Appellant replied, “Why should we go on because I’ll be spinning my wheels.  You’re spinning your wheels.”  However, Appellant never answered Deputy Robinson’s question whether he wanted to stop, he continued speaking without clarifying his remark, and he never again requested to terminate the interview.

A law enforcement officer may not continue to question the suspect until the officer succeeds in persuading the suspect to change his mind and talk.  
Dowthitt v. State
, 931 S.W.2d 244, 257 (Tex. Crim. App. 1996).  But an officer need not stop his questioning unless the suspect's invocation of rights is unambiguous, and the officer is not required to clarify ambiguous remarks.  
Id
.

Here, Appellant’s comments were ambiguous.  Taken in context, it appears Appellant was of the opinion that he was wasting his time because he was of the belief that he was “spinning” his wheels.  
See id
.  (finding statement – “I can't say more than that.  I need to rest.” – was not an unambiguous invocation of the right to remain silent, but merely an indication that defendant believed he was physically unable to continue); 
Franks v. State
, 90 S.W.3d 771, 786-87 (Tex. App.—Fort Worth 2002, no pet.) (holding defendant’s statement – “I don’t want to talk anymore.  I’m tired.” – was ambiguous, and his rights were not violated by the continuation of the interrogation).  Moreover, after this statement, Appellant continued speaking with Deputy Robinson and did not unequivocally indicate he wanted to stop.  Thus, we hold that Appellant’s statement was ambiguous and that his rights were not violated by the continuation of the interrogation.  Therefore, we overrule Appellant’s argument.

VII. STATEMENT AFTER MAGISTRATE’S HEARING

Finally, Appellant complains that the second interview and the written statement were given after he had invoked his right to counsel.  Appellant argues that the magistrate’s warning form shows that he requested a court-appointed attorney.  Appellant further argues that adversarial proceedings had begun and that he was entitled to defense counsel at all “critical stages” of the prosecution, absent a valid waiver.  In making his argument, Appellant relies on his Sixth Amendment right to counsel.  To properly analyze Appellant’s argument, we must progress through a series of steps.

A. Attachment of Sixth Amendment

The Sixth Amendment right to assistance of counsel does not attach prior to the initiation of adversarial judicial proceedings, which may be initiated by way of formal charge, preliminary hearing, indictment, information, or arraignment.  
United States v. Gouveia
, 467 U.S. 180, 187-88, 104 S. Ct. 2292, 2297 (1984); 
Green v. State
, 872 S.W.2d 717, 719 (Tex. Crim. App. 1994); 
Franks
, 90 S.W.3d at 788.  
Therefore, we must first determine whether taking Appellant before the magistrate in the instant case constituted the beginning of adversarial proceedings.  The magistrate’s hearing consisted of advising Appellant of his rights, informing him of the crime accused, determining probable cause for continued detention, advising him of the right and procedures for obtaining appointed counsel, and setting bond.  Thus, the hearing appears to have complied with the requirements of an article 15.17 hearing.  
Tex. Code Crim. Proc. Ann.
 art. 15.17 (Vernon Supp. 2004-05).  The clerk’s record also shows that there was an arrest warrant issued for Appellant prior to the day he was brought in for questioning.

The Court of Criminal Appeals has not set a bright line rule as to when adversarial proceedings have begun, and Texas case law is not determinative.  
See State v. Frye
, 897 S.W.2d 324, 328 (Tex. Crim. App. 1995) (acknowledging that court has not declared a “bright line rule” for determining when adversarial proceedings have commenced); 
Green
, 872 S.W.2d at 720 (noting caselaw is indeterminate on what events serve to initiate adversarial proceedings).  Although an arrest alone has been held insufficient to show the initiation of criminal proceedings, an article 15.17 hearing accompanied by an arrest warrant has been held to mark the beginning of formal adversarial proceedings.  
Compare Dunn v. State
, 696 S.W.2d 561, 565 (Tex. Crim. App. 1985) (holding mere arrest and subsequent questioning not sufficient formalization of proceedings to trigger requirement of counsel under the Sixth Amendment), 
cert. denied
, 475 U.S. 1089 (1986), 
overruled on other grounds by Goodwin v. State
, 799 S.W.2d 719 (Tex. Crim. App. 1990), 
with
 
Nehman v. State
, 721 S.W.2d 319, 323 n.2 (Tex. Crim. App. 1986) (concluding formal judicial proceedings had been initiated by the time of defendant’s article 15.17 “warning hearing” because charges had been filed).  Likewise, whether the filing of a felony complaint is sufficient to trigger Sixth Amendment protections is also not entirely clear.  
Compare
 
Green
, 872 S.W.2d at 720 (declining to hold that filing of felony complaint triggered Sixth Amendment protections), 
with Barnhill v. State
, 657 S.W.2d 131, 132 (Tex. Crim. App. [Panel Op.] 1983) (finding Sixth Amendment right to counsel attached upon filing of felony complaint with magistrate).  Based on 
Nehman
, we conclude in this case that the adversarial process had begun because Appellant was taken for his article 15.17 hearing after an arrest warrant had been issued.

B. Invocation of Right to Counsel

Having concluded that adversarial proceedings had begun, we must next consider whether Appellant invoked his right to counsel.  In 
State v. Hernandez
, the San Antonio Court of Appeals held that the defendant, who was arrested following the filing of formal charges, did invoke his Sixth Amendment right to counsel at his article 15.17 hearing where he claimed indigency and requested appointment of counsel.  842 S.W.2d 306, 311 (Tex. App.—San Antonio 1992, pet. ref’d), 
cert. denied
, 509 U.S. 927 (1993).  We likewise hold that in this case, where defendant was taken before a magistrate for his article 15.17 hearing after formal charges had been filed, his claim that he was indigent and wished to have counsel appointed was sufficient to invoke his Sixth Amendment right to counsel.

C. Waiver of Sixth Amendment Right to Counsel

Once the Sixth Amendment attaches, government efforts to elicit information from the accused, including interrogation, represent “critical stages” at which the Sixth Amendment applies.  
Michigan v. Jackson
, 475 U.S. 625, 630, 106 S. Ct. 1404, 1408 (1986); 
Lemmons v. State
, 75 S.W.3d 513, 520 (Tex. App.—San Antonio 2002, pet. ref’d).  The State has the burden to prove Appellant knowingly, intelligently, and voluntarily waived his Sixth Amendment right to counsel.  
Jackson
, 475 U.S. at 633; 
Lemmons
, 75 S.W.3d at 520.  The Court of Criminal Appeals has recently recognized a two-step requirement to show that an accused has waived his previously invoked right to counsel.  
Cross v. State
, 144 S.W.3d 521, 526-27 (Tex. Crim. App. 2004).  This waiver is based on the rule established by the United States Supreme Court in 
Edwards v. Arizona
, 451 U.S. 477, 101 S. Ct. 1880 (1981).  
Cross
, 144 S.W.3d at 526-27.  In
 Edwards
, the Court held that “an accused[,] . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversation with the police.”  
Id
.  Although 
Edwards
 dealt with the Fifth Amendment right to counsel, it was extended by the Court to the context of the Sixth Amendment.  
See Jackson
, 475 U.S. at 636 (concluding that the assertion of the right to counsel is no less significant when the basis of the assertion is the Sixth Amendment); 
see also Holloway v. State
, 780 S.W.2d 787, 790 (Tex. Crim. App. 1989) (recognizing the extension of 
Edwards
 to the Sixth Amendment context).  In 
Oregon v. Bradshaw
, the Supreme Court clarified 
Edwards
 and established a two-step process to determine whether a suspect has waived his previously invoked right to counsel.  462 U.S. 1039, 1044-46, 103 S. Ct. 2830, 2834-35 (1983).  As explained by the Court of Criminal Appeals in 
Cross
, the first step requires proof that the suspect himself initiates further communication with the police after invoking his right to counsel.  
Cross
, 144 S.W.3d at 527.  The second step requires proof that, after the suspect reinitiates communication with the authorities, the suspect validly waives the right to counsel.  
Id
.  Although 
Cross
 involved the Fifth Amendment, there is no reason this rule should not be extended to the context of the Sixth Amendment, based on the reasoning of the 
Jackson
 Court. 
 See Jackson
, 475 U.S. at 632, 106 S. Ct. at 1408-09 (stating that the Sixth Amendment right to counsel requires at least as much protection as the Fifth Amendment right to counsel).  Therefore, in the present case, the State was required to prove that Appellant reinitiated contact after he requested appointment of counsel at his article 15.17 hearing and that he validly waived his right to counsel.  
Cross
, 144 S.W.3d at 527.

1. Appellant Reinitiated Contact

Appellant did reinitiate contact with the police after he was taken before the magistrate.  Deputy Johns testified that, after he escorted Appellant back to the jail after his hearing, Appellant requested again to speak with Deputy Robinson.  Deputy Johns testified that Appellant specifically stated, “I want to talk to that dude I was talking to before.”  In its findings of fact and conclusions of law, the trial court found that Appellant reinitiated contact with law enforcement.  There is no reason to dispute this finding by the trial judge, as he was in the position to evaluate the credibility and demeanor of the witnesses.  
See Guzman
, 955 S.W.2d at 89 (stating that as a general rule appellate courts should afford almost total deference to a trial court's determination of the historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor).

2. Did Appellant Validly Waive Previously Invoked Right to Counsel?

Appellant argues that there is no evidence that after he invoked his right to counsel that he was again read his rights or waived them before giving his second oral statement.  We agree.

3. Tex. Code Crim. Proc. Ann.
 art. 38.22

Article 38.22, section 3(a) governs the admissibility of the oral statement of an accused.  
Tex. Code Crim. Proc. Ann.
 art. 38.22, § 3(a) (Vernon Supp. 2004-05).  It states that no oral statement of an accused shall be admissible unless “prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning.”  
Id
. § 3(a)(2).
  Section 2 requires that the accused, prior to making the statement, be warned that

(1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

(2) any statement he makes may be used as evidence against him in court;

(3) he has the right to have a lawyer present to advise him prior to and during any questioning;

(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and 

(5) he has the right to terminate the interview at any time.

Id
. § 2(a).

Furthermore, section 3(e) requires that the “courts of this state shall strictly construe Subsection (a) of this section and may not interpret Subsection (a) as making admissible a statement unless all requirements of the subsection have been satisfied by the state.”  
Id
. § 
(3)(e); 
see also Davidson v. State
, 25 S.W.3d 183, 185 (Tex. Crim. App. 2000) (noting that by its plain language section 3(e) requires strict compliance with all portions of section 3(a)).

In the instant case, after Appellant stated he wanted to again speak with Deputy Robinson, he was taken back into the interview room where he was videotaped.  As the second interview began, Deputy Robinson stated, “You’ve just had your rights read.”  However, Deputy Robinson did not advise Appellant of his rights on the videotape.  Additionally, Deputy Robinson testified that he did not read Appellant his rights before the second oral interview and also testified that he was not present at the magistrate’s hearing and therefore did not know if Appellant had been advised of his rights while in front of the magistrate.

Therefore, since Section 3(a) was not strictly complied with, we hold that Appellant’s oral confession should not have been admitted.  
See Davidson
, 25 S.W.3d at 185 (finding because appellant's statements were not recorded in accordance with the dictates of article 38.22, it would appear that they were inadmissible at appellant's trial).  The trial court thus abused its discretion in admitting the second oral statement.  
See Renfro v. State
, 958 S.W.2d 880, 888 (Tex. App.—Texarkana 1997, pet. ref’d) (finding trial court abused its discretion in admitting oral confession that did not comply with the requirements of article 38.22, section3(a)).  Having found that Appellant’s second oral statement was inadmissible, we must determine whether allowing its admission caused harm.

VIII. HARM

Because the error is constitutional, we apply rule 44.2(a).  
Tex. R. App. P.
 44.2(a).  The error is harmful unless we find, beyond a reasonable doubt, that the error in admitting Appellant’s second oral statement made no contribution to the conviction or the punishment.  
Dowthitt
, 931 S.W.2d at 263; 
Renfro
, 958 S.W.2d at 888.

Our harmless error analysis should not focus on the propriety of the outcome of the trial; instead, we should calculate as much as possible the probable impact on the jury in light of the existence of other evidence.  
Wesbrook v. State
, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000), 
cert. denied
, 532 U.S. 944 (2001).  We consider the source and nature of the error, the extent that it was emphasized by the State, its probable collateral implications, the weight a juror would probably place on the error, and whether declaring it harmless would be likely to encourage the State to repeat it with impunity.  
Harris v. State
, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989).  This requires us to evaluate the entire record in a neutral, impartial, and even-handed manner, not “in the light most favorable to the prosecution.”  
Id.
 at 586.

A. Written Statement

As noted earlier, Appellant also provided a written statement after his oral confession.  This written statement contained the required warnings and also contained an explicit waiver of rights, which Appellant signed before writing out his statement.  
See Millslagle v. State
, 150 S.W.3d 781, 784 (Tex. App.—Austin 2004, pet dism’d, untimely filed) (holding that failure to record defendant’s oral statement did not render inadmissible his later written statement).  Additionally, the written statement was entirely consistent with the oral statement.  Thus, under the second step discussed in 
Cross
, this written statement shows that Appellant validly waived his previously invoked right to counsel.  
Cross
, 144 S.W.3d at 527.  Therefore, Appellant’s written statement, provided after reinitiating contact with law enforcement and validly waiving his right to counsel, was properly admitted at his trial. 

Appellant also challenged the written waiver by arguing that there are circumstances where a waiver under the Fifth Amendment might not be sufficient to overcome the Sixth Amendment invocation of the right to counsel. Appellant cites 
Holloway
 as support for this argument
.  
780 S.W.2d at 795 (analyzing the relationship between the protections provided by the Fifth and Sixth Amendments).  However, the court in 
Holloway
 went further and found that “if a suspect is in fact represented by counsel and the case progresses to the point at which the Sixth Amendment applies, the Sixth Amendment imposes requirements . . . not demanded by 
Miranda
 and the Fifth Amendment.”  
See id.
 (holding that once an accused is represented by counsel, he cannot unilaterally waive his Sixth Amendment right).  Here, Appellant was not represented by counsel at the time that he reinitiated contact with Deputy Robinson.  Therefore, Appellant could unilaterally waive his previously invoked right to counsel.  Additionally, the Supreme Court held in 
Patterson v. Illinois
 that “an accused who is admonished with the warnings prescribed by this Court in 
Miranda
 . . . has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one.”  487 U.S. 285, 296, 108 S. Ct. 2389, 2397 (1988).  We therefore overrule Appellant’s argument with regard to his written statement.

B. Additional Evidence 

Besides the statements provided by Appellant, there was additional evidence connecting him to the offense.  Both victims were able to pick Appellant’s picture out of a lineup and identify him in court as their attacker. Moreover, the other person charged in this offense, Howard Hill, testified at Appellant’s trial to his role in the offense.  Therefore, although the second oral statement was erroneously admitted, we conclude that it was harmless error.  
See Dowthitt
, 931 S.W.2d at 263 (finding error in admitting oral statement harmless where written statement was cumulative of the details provided in the oral statement and physical evidence strongly connected defendant to the murders); 
Renfro
, 958 S.W.2d at 888 (concluding erroneous admission of defendant’s oral statement was harmless because defendant did not say anything in oral confession not included in the written confession, which was cumulative of and entirely consistent with oral confession).

IX. ADDITIONAL ARGUMENT ON APPEAL

We note that Appellant has argued in his appellate brief that he “invoked his right to counsel when brought before the magistrate, indicated he did not fully understand all of his rights, and was never read his rights again and never affirmatively waived his rights prior to the taking of his oral statement which lead [sic] to his written statement.”  However, as detailed above, Appellant did not argue at the suppression hearing that he did not fully understand his rights, nor did he argue that the second oral statement in any way tainted his written statement.  Therefore, Appellant cannot now raise those arguments on appeal.  
See Judd v. State
, 923 S.W.2d 135, 138 (Tex. App.—Fort Worth 1996, pet. ref’d) (emphasizing that any objection at trial that differs from complaint on appeal preserves nothing for review);
 McNairy v. State
, 777 S.W.2d 570, 573 (Tex. App.—Austin 1989), 
aff’d on other grounds
, 835 S.W.2d 101 (Tex. Crim. App. 1991) (acknowledging that the contention presented on appeal must be the same as that presented to the trial court at the pretrial hearing on the motion to suppress evidence).  Thus, we will not address these arguments.

X. CONCLUSION

Having overruled Appellant’s sole issue, we affirm the trial court’s judgment.

ANNE GARDNER

JUSTICE

PANEL A: CAYCE C.J.; GARDNER and McCOY JJ.

PUBLISH

DELIVERED:  February 17, 2005

FOOTNOTES
1:
In making this argument, Appellant cites as authority 
Williams v. State
, 84 S.W.3d 243 (Tex. App.—Tyler 2002, pet. granted).  However, the Court of Criminal Appeals remanded with instructions to the court of appeals to dismiss for lack of jurisdiction.  
Williams v. State
, No. 12-01-00126-CR, 2002 WL 1822326 (Tex. App.—Tyler Aug. 7, 2002, no pet.).  Additionally, 
Williams
 involved the issue of waiver in the context of a written confession, while Appellant cites it in support of his argument against the waiver in his oral statement.  Thus, the case is distinguishable.  Furthermore, in the instant case as will be discussed, Appellant provided a written statement that contained an explicit waiver of rights.